**PRECEDENTIAL**
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3356
_____


ALISSA MOON;
YASMEEN DAVIS, individually and on
behalf of all others similarly situated

v.

BREATHLESS INC, a/k/a Vision Food & Spirits, d/b/a
Breathless Men's Club

Alissa Moon,
            Appellant
_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-15-cv-06297)
District Judge:  Honorable Susan D. Wigenton
_____


Argued January 18, 2017

Before: FISHER,[*] HARDIMAN, and GREENAWAY, JR.,
Circuit Judges


(Opinion Filed: August 17, 2017)

Jeremy E. Abay, Esq. **[ARGUED]**
John K. Weston, Esq.
Sacks Weston Diamond, LLC
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103

*Counsel for Appellant*

Marc J. Gross, Esq. **[ARGUED]**
Justin P. Kobenschlag, Esq.
Greenbaum, Rowe, Smith & Davis LLP
75 Livingston Avenue, Suite 301
Roseland, NJ 07068

*Counsel for Appellee*

_____

---

[*] Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.

OPINION OF THE COURT
_____

GREENAWAY, JR., *Circuit Judge*.

In this appeal, we must determine whether an arbitration clause in a signed contract covers Appellant's statutory claims. The United States District Court for the District of New Jersey answered this question in the affirmative. We disagree. We shall reverse and remand.

## I. BACKGROUND

In 2013, Alissa Moon ("Moon") began performing at the Breathless Men's Club ("Club") in Rahway, New Jersey. In January of 2015, Moon agreed to rent performance space in the Club and signed an Independent Dancer Rental Agreement ("Contract"). The Contract contains an employment provision and an arbitration clause.

The employment provision provides:

> Dancer understands and agrees that he/she is an independent contractor and not an employee of club. Dancer is renting the performance space for an agreed upon fee previously agreed to by Dancer and Club.

App. 41.

The arbitration clause reads:

3

In a dispute between Dancer and Club under this Agreement, either may request to resolve the dispute by binding arbitration. THIS MEANS THAT NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL – DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION. <u>ARBITRATION MUST BE ON AN INDIVIDUAL BASIS</u>. THIS MEANS NEITHER YOU NOR WE MAY JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION, OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS.

App. 42.

In August of 2015, Moon[2] sued the Club pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1, *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a, *et seq.* App. 10–37. In September, the Club moved to dismiss the Complaint on the ground that the Contract's arbitration clause foreclosed Moon from seeking relief in the District Court. In November, the District Court denied the Motion to Dismiss and ordered the parties to engage in limited discovery on the arbitration issue. After discovery, the Club filed a Motion for Summary Judgment in favor of arbitration and the District

---

[2] Another performer sued but she did not join the appeal.

4

Court held a hearing. On July 29, 2016, the District Court granted the Club's Motion for Summary Judgment concluding that, "[T]here [wa]s no genuine dispute as to whether Plaintiff's claims fall within the scope of the arbitration provision." *Moon v. Breathless, Inc.*, No. CV1506297SDWLDW, 2016 WL 4072331, at *4 (D.N.J. July 29, 2016). On August 10, 2016, Moon filed a timely Notice of Appeal. On appeal, Moon asks us to determine anew whether her claims fall within the scope of the Contract's arbitration provision.

## II.    JURISDICTION

For her federal claims, Moon invoked the District Court's jurisdiction pursuant to 28 U.S.C. § 1331. For her state claims, Moon drew upon the District Court's power of supplemental jurisdiction, 28 U.S.C. § 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III.    STANDARD OF REVIEW

On an appeal from a grant of summary judgment, our review is "plenary" and we "apply the same test the district court should have utilized initially." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citation omitted). Summary judgment should be granted only when the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]ll justifiable inferences are to be drawn in [the nonmovant's] favor," but the "mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the

5

issue." *Giles*, 571 F.3d at 322 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## IV. ANALYSIS

The parties debate an arbitration clause's scope. Pursuant to the precedent of the Supreme Court of the United States, state law applies: "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The parties agree that New Jersey law applies to this controversy. *See* Appellant's Br. at 8 ("As a matter of contract interpretation, federal courts apply state contract law to determine the scope of an arbitration clause."); Appellee's Br. at 4 ("Federal courts ordinarily apply state contract law in determining the enforceability and scope of an arbitration clause.").

Thus we must decide two questions under New Jersey law: First, should a court decide whether the parties should submit this issue to arbitration? Second, if the parties have contracted to allow a court to decide arbitrability, have the parties agreed to arbitrate the claims at issue here? We answer the first question in the affirmative and the second question in the negative.

## A. A Court Should Decide Arbitrability

Under New Jersey law, "the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability."

6

*Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1177 (N.J. 2016).  To overcome this presumption, an arbitration clause must contain "'clea[r] and unmistakabl[e]' evidence 'that the parties agreed to arbitrate arbitrability.'"  *Id.* (alterations in original) (quoting *First Options*, 514 U.S. at 944).  "Silence or ambiguity in an agreement does not overcome the presumption that a court decides arbitrability."  *Id.* at 1178.

The Supreme Court of New Jersey applied these principles in *Morgan v. Sanford Brown Institute*.  In that case, students sued a for-profit, post-secondary education institute under the New Jersey Consumer Fraud Act; and the institute moved to dismiss the complaint on the ground that the students signed the following arbitration agreement with the institute: "[A]ny objection to arbitrability or the existence, scope, validity, construction, or enforceability of this Arbitration Agreement shall be resolved pursuant to this paragraph (the 'Arbitration Agreement')."  *Id.* at 1182.

In *Morgan*, the court found that the arbitration clause did not strip the court of its authority to decide arbitrability.  It supported its conclusion with two arguments.  First, "[t]he *paragraph* does not explain that an arbitrator will decide whether the parties agreed to arbitrate legal claims, including statutory violations . . . ."  *Id.* at 1179.  Second, the institute conceded the issue in the lower court: "Defendants did not argue to the motion court that it lacked jurisdiction to decide whether the parties agreed to arbitration because that role was for the arbitrator alone."  *Id.*

For the same reasons, we find that the parties here did not agree to arbitrate arbitrability.  First, the arbitration clause here falls below the standard set by *Morgan*.  In *Morgan*, the arbitration clause referenced arbitrability but did not clearly

7

delegate this issue to an arbitrator: "[A]ny objection to arbitrability or the existence, scope, validity, construction, or enforceability of this Arbitration Agreement shall be resolved pursuant to this paragraph (the 'Arbitration Agreement')." *Id.* at 1182. Here, the arbitration clause fails to mention arbitrability, let alone the venue for deciding it:

> In a dispute between Dancer and Club under this Agreement, either may request to resolve the dispute by binding arbitration. THIS MEANS THAT NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL – DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION. <u>ARBITRATION MUST BE ON AN INDIVIDUAL BASIS</u>. THIS MEANS NEITHER YOU NOR WE MAY JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION, OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS.

App. 42.

Second, like in *Morgan*, the Defendant conceded in the trial court that courts must decide issues of arbitrability:

> When confronted with a motion to stay or dismiss under the [Federal Arbitration Act], the *Court* engages in a limited review to determine whether: (1) there is a valid, enforceable agreement to arbitrate; (2) the claims at issue

8

fall within the scope of the agreement to arbitrate; and, (3) the moving party has waived arbitration. 9 U.S.C. § 3 . . . .

Motion to Dismiss in Favor of Arbitration or, in the Alternative, to Stay Pending Arbitration at 6, *Alissa Moon et al. v. Breathless, Inc.*, No. 2:15-cv-06297-SDW-LDW (D.N.J. Sept. 24, 2015), ECF No. 12-2 (emphasis added). Having established our power to decide the arbitration clause's scope, we now turn to this issue.

## B.    A Court Should Decide Moon's Wage-and-Hour Claims

To cover a statutory right under New Jersey law, an arbitration clause must do three things. First, it must identify the general substantive area that the arbitration clause covers: "To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 773 A.2d 665, 672 (N.J. 2001); *see also Atalese v. U.S. Legal Servs. Grp.*, 99 A.3d 306, 315–16 (N.J. 2014) ("But the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute."); *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 883 (N.J. 2002) ("In the circumstances of this case, the language in the arbitration agreement not only was clear and unambiguous, it was also sufficiently broad to encompass reasonably plaintiff's statutory causes of action.").

Second, it must reference the types of claims waived by the provision: "It should also reflect the employee's

9

general understanding of the type of claims included in the waiver, *e.g.,* workplace discrimination claims." *Garfinkel*, 773 A.2d at 672. It need not, however, mention the specific statutory rights at issue: "We do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration." *Atalese*, 99 A.3d at 315.

Third, it must explain the difference between arbitration and litigation: "The waiver-of-rights language, however, must be clear and unambiguous—that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 315; *see also Martindale*, 800 A.2d at 884 (enforcing an arbitration clause because it, *inter alia*, "addressed specifically a waiver of the right to a jury trial, augmenting the notice to all parties to the agreement that claims involving jury trials would be resolved instead through arbitration").

The Supreme Court of New Jersey has interpreted three arbitration clauses to determine whether they covered a particular type of statutory claim. In two of these cases, *Garfinkel* and *Atalese*, the court found that the arbitration clause did not cover the plaintiff's statutory claims. In the other, *Martindale*, the Supreme Court of New Jersey came to the opposite conclusion. The case at bar resembles *Garfinkel* and *Atalese* more than *Martindale*. As a result, we conclude here that the arbitration clause does not cover Moon's wage-and-hour claims.

## 1.    *Garfinkel*

In *Garfinkel*, a doctor employed by the Morristown Obstetrics and Gynecology Associates ("MOGA") sued MOGA for breaching an employment contract, for perpetrating a tort, and for violating the New Jersey Law Against Discrimination ("LAD"). *Garfinkel*, 773 A.2d at 668. In response to the doctor's suit, MOGA invoked the following arbitration clause:

> Except as otherwise expressly set forth in Paragraphs 14 or 15 hereof, any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in Morristown, New Jersey, in accordance with the rules then obtaining of the American Arbitration Association, and judgement [sic] upon any reward rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof.

*Id*.

The Supreme Court of New Jersey found that the arbitration clause did not cover the doctor's statutory claims for three reasons. First, the clause did not reference statutory claims: "Moreover, the language does not mention, either expressly or by general reference, statutory claims redressable by the LAD." *Id* at 672. Second, the clause implicitly exempted all other statutory claims by explicitly exempting some: "As noted, paragraph eighteen excepts from its purview the two paragraphs of the agreement pertaining to post-termination restrictions and severance pay. Those exceptions further suggest that the parties intended disputes over the terms and conditions of the contract, not statutory

11

claims, to be the subject of arbitration." *Id.* Third, the clause mentioned contract disputes: "The clause states that 'any controversy or claim' that arises from the agreement or its breach shall be settled by arbitration. That language suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself." *Id.*

## 2. *Atalese*

In *Atalese*, a customer sued a debt-adjustment services company in New Jersey court for violating New Jersey's Consumer Fraud Act and the Truth-in-Consumer Contract, Warranty and Notice Act. The company responded by invoking the following arbitration clause of its service agreement:

> In the event of any claim or dispute between Client and the USLSG related to this Agreement or related to any performance of any services related to this Agreement, the claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request on the other party.

*Atalese*, 99 A.3d at 310.

The Supreme Court of New Jersey found that the consumer had not waived her statutory rights by signing this arbitration provision because "the wording of the service agreement did not clearly and unambiguously signal to plaintiff that she was surrendering her right to pursue her statutory claims in court." *Id.* at 316.

12

**3.** *Martindale*

In *Martindale*, an employee sued her employer under New Jersey's Family Leave Act and New Jersey's Law Against Discrimination. In response to suit, her employer invoked an arbitration clause contained in an employment application. The clause read as follows: "As a condition of my employment, I agree to waive my right to a jury trial in any action or proceeding related to my employment with [the Employer]. I understand that I am waiving my right to a jury trial voluntarily and knowingly, and free from duress or coercion." *Martindale*, 800 A.2d at 875 (capitalization omitted).

The Supreme Court of New Jersey found that the arbitration clause covered the employee's claims for two reasons. First, the court found that the contract was sufficiently broad because, unlike in *Garfinkel* and other cases, it did not make a limiting reference to a contract: "Unlike the arbitration provisions contained in *Garfinkel* and *Alamo,* the arbitration provision here does not contain any limiting references." *Id.* at 884. Second, the court held that the arbitration provision was appropriately clear because it specifically referenced the type of claims covered: "Its wording provided plaintiff with sufficient notice at the time she signed the agreement that all claims relating to employment with and termination from [the Employer] would be resolved through arbitration." *Id.*

**4.** **Applying *Garfinkel*, *Atalese*, and *Martindale***

*Garfinkel* and *Atalese* govern the case at bar. We reach this conclusion because the arbitration clause at issue here, like the arbitration clauses in *Garfinkel* and *Atalese*,

13

references contract disputes–not statutory rights. In *Garfinkel,* the clause applied to "any controversy or claim arising out of, or relating to, this Agreement or the breach thereof . . . ." *Garfinkel*, 773 A.2d at 668. In *Atalese*, the clause covered "any claim or dispute . . . related to this Agreement or related to any performance of any services related to this Agreement . . . ." *Atalese*, 99 A.3d at 310. Here, the clause likewise only includes "a dispute between Dancer and Club under this Agreement." App. 42. The Club has not identified a significant difference between these three formulations which all point to disputes related to the agreement at issue.

In *Atalese* and *Garfinkel*, the Supreme Court of New Jersey found that the quoted language made the arbitration clauses applicable only to contract claims. *Atalese*, 99 A.3d at 315 ("Nor is it written in plain language that would be clear and understandable to the average consumer that she is waiving statutory rights."); *Garfinkel*, 773 A.2d at 672 ("That language suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself."). Because the arbitration clause here resembles the arbitration clauses in *Garfinkel* and *Atalese*, and because the Supreme Court of New Jersey found that the arbitration clauses in *Garfinkel* and *Atalese* only applied to contract disputes, we hold that the arbitration clause here does not cover Moon's statutory claims.

Two issues prevent us from finding that *Martindale* governs the case at bar. First, *Martindale* held that the contract was sufficiently broad to cover statutory claims because it lacked a limiting principle, such as a reference to an agreement, unlike *Garfinkel*. *Martindale*, 800 A.2d at 884.

14

Here, the contract contains a limiting term because it directly references the Contract: "In a dispute between Dancer and Club under this Agreement . . . ." App. 42. Second, *Martindale* held that the arbitration clause was sufficiently clear to cover statutory rights because it specifically referenced claims "related to my employment with [the Employer]." *Martindale*, 800 A.2d at 875. Here, the arbitration clause does not reference employment or status as an independent contractor.

In its decision, the District Court focused on Moon's attempts to question the arbitration clause's validity. It devoted the final two pages of its decision to the issue presented here. In those final pages, the District Court cited *Atalese* in passing but it did not cite *Morgan*, *Garfinkel*, *Martindale*, and the principles that those cases support. Insofar as those decisions control, the District Court erred in omitting any reference to them.

On appeal, the Club responds to *Garfinkel* in two ways.[3] First, it disputes the factual similarities and argues that *Garfinkel* does not govern the case before us because *Garfinkel* involved employees, whereas the case at bar involves, according to the Club, an independent contractor: "None of the cases cited by Appellant involved a dispute as to whether the individual making statutory employment claims was an employee or independent contractor." Appellee's Br. at 12. Second, it asserts that deciding the arbitration question would force the court to determine the case's merits and that the Supreme Court has prohibited this result: "If the Court were to find that Breathless should have specifically

---

[3] The Club ignores *Atalese*'s substance entirely.

15

referenced an employment relationship or statutory employment claims in the arbitration provision, which it should not, the Court would effectively be ruling on the merits of Appellant's underlying claims . . . ." *Id.* at 13.

Neither argument persuades. The first argument lacks merit because the Supreme Court of New Jersey has applied *Garfinkel* to cases outside of the employment context. *See, e.g.*, *Atalese*, 99 A.3d at 314 (applying *Garfinkel* to a consumer contract).

The second argument also misses the mark because the case that it relies upon does not support its point. To substantiate this second argument, the Club quotes the following language from *AT&T Technologies, Inc. v. Communications Workers of America*: "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." 475 U.S. 643, 649 (1986). This language establishes the two step process for deciding arbitration disputes and the requirement that courts may only resolve issues that fall outside of the arbitration clause. *See id.* at 651 ("If the court determines that the agreement so provides, then it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement."). It does not, as the Club asserts, prove the impossibility of distinguishing these two steps. Indeed, in *AT&T Technologies, Inc.*, the Supreme Court remanded the case to the trial court to perform the first step of the inquiry. *Id.* at 648.

Furthermore, the Club's second argument fails because the District Court could find that the arbitration clause does not cover the plaintiff's wage-and-hour claims without

16

deciding the claims' merits. To answer the arbitrability question, the Court must decide what the arbitration provision says. *See Hirsch v. Amper Fin. Servs., LLC*, 71 A.3d 849, 857 (N.J. 2013) ("A court must look to the language of the arbitration clause to establish its boundaries."). To resolve the separate wage-and-hour claims, the Court would need to determine what the Appellant does. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act.").

The Club presents one final counterargument—that Moon's claim that she should be treated as an employee actually arises "under the Agreement" because it refers to Moon as an "independent contractor." Appellant's Br. at 10–11 (citing App. 41, 42). Despite the contract's employment provision, Moon's claims still *arise under* the FLSA and New Jersey statutes, not the agreement itself. In *Bell v. Southeastern Pennsylvania Transportation Authority*, we held that SEPTA employees' wage-related claims under the FLSA did not arise under their Collective Bargaining Agreement ("CBA") merely because they asked for more pay than agreed upon in the CBA. 733 F.3d 490, 495–96 (3d Cir. 2013). The employees did not argue that SEPTA failed to compensate them in the amount set forth in the CBA; they instead argued that the CBA in question failed to comply with the FLSA. *Id.* at 495. As such, resolution of the FLSA claims required resolution not of a dispute under the terms of the CBA, but of a statutory claim that the CBA violated the law. *Id.* Thus, we held the arbitration clause governing disputes under the CBA in that case did not apply to their FLSA claims. *Id.* at 496. Similarly, Moon's claim here is that she should receive

17

certain wages and benefits as an employee under the FLSA despite her agreement stating otherwise. Because she relies "solely on [her] statutory, rather than [her] contractual, rights to recovery, . . . [she] may proceed on [her] FLSA claims without first seeking arbitration." *Id.*

Because the arbitration clause at bar resembles those at issue in *Garfinkel* and *Atalese* more than the one at issue in *Martindale* and because Moon's claims arise under statutes rather than the Contract, we find that the arbitration clause does not cover Moon's statutory wage-and-hour claims.

## V.    CONCLUSION

For the foregoing reasons, we will reverse the orders of the District Court and remand these matters.