NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3585
_____

MARGARET PASQUA;
KIMBERLY BROWNE,
                              Appellant

v.

THE COUNTY OF HUNTERDON;
HUNTERDON COUNTY BOARD
OF FREEHOLDERS
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 3-14-cv-04203)
District Judge: Honorable Freda L. Wolfson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 23, 2017
_____

Before: GREENAWAY, JR., NYGAARD, and FISHER, *Circuit Judges*.

(Opinion Filed: January 10, 2018)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Margaret Pasqua and Kimberly Browne were relieved from their positions as Chief Financial Officer and Treasurer of the County of Hunterdon, respectively, by the Hunterdon County Board of Chosen Freeholders (the "Board"). They argued below that they were not afforded sufficient process prior to termination in violation of the Fourteenth Amendment and state law, and that they were fired for political reasons in violation of N.J. Stat. Ann. § 40A:9-25. The District Court dismissed their claims on summary judgment, and they now appeal. For the reasons that follow, we will affirm the District Court's decision.

I. **FACTS AND PROCEDURAL HISTORY**

In May 2008, the County of Hunterdon (the "County") and/or the Board (collectively, the "County Defendants") appointed Pasqua as Chief Financial Officer and Treasurer and Browne as Director of Finance. Pasqua's responsibilities included collecting and receiving all monies due to the County, keeping adequate financial records in the absence of a comptroller, and maintaining general accounting books. *See* N.J. Stat. Ann. § 40A:9-27. Browne, as Director of Finance, was similarly required to "accurately maintain the books and records of the County's finances." A101. Both Appellants were required to "assist with the development of the budget for the County." A66.

In 2013, the County Defendants retained an outside auditor, who returned a report indicating that the County's finances had been mismanaged. They accepted the conclusions of the report, and subsequently issued a notice of disciplinary action to Pasqua and Browne in September 2013, charging them each in the first instance with violating the

2

Hunterdon County Corrective Action/Disciplinary Program Table of Offenses due to neglect of duty, serious mistake due to carelessness, failure to complete required reports, incompetency, and insubordination. Appellants contested the charges, arguing that the County's Human Resources Department was to blame for the mismanagement.

The County scheduled a joint hearing to adjudicate both Appellants' charges before an impartial Hearing Officer. After denying Appellants' request for separate hearings, the Hearing Officer proceeded to conduct nine separate days of hearings, allowing both sides to present testimony and documentary evidence. Appellants were represented by counsel, and according to their submissions alone, the hearings entailed the testimony of eight witnesses, and the production of twenty-six County exhibits and sixty-seven employee exhibits.

In December 2013, the Hearing Officer issued a Preliminary Report recommending that Appellants be terminated. The report concluded that both Appellants "demonstrated incompetency or inability to perform their assigned duties" because they "placed the County's ability to obtain federal grants at risk," "cost the County $934,264.08," and failed to complete various required reports. A102-103 (Preliminary Report). On December 30, 2013, based on the Preliminary Report, the Board unanimously voted to terminate Appellants. A final report with the same recommendation was issued on May 16, 2014.

In February 2014, Appellants brought suit in the Superior Court of New Jersey, contending that they were entitled to, *inter alia*, a de novo review of their termination hearings by the Superior Court. They argued that their joint hearings did not afford sufficient due process and that their dismissal was motivated by political reasons because

3

they advised one of the Board members, Robert Walton, to propose a one-penny tax increase to alleviate financial stress on the County's budget. According to Appellants, this measure was unpopular with other Board members, who terminated them in retaliation, in violation of N.J. Stat. Ann. § 40A:9-25, which provides that "[n]o officer or employee shall be removed from his office or position for political reasons." N.J. Stat. Ann. § 40A:9-25. The County Defendants moved to dismiss the complaint for failure to state a claim.

The Superior Court dismissed Browne's claim for de novo review because she was employed at-will, but held that she could state a claim under N.J. Stat. Ann. § 40A:9-25 for termination for political reasons. It also determined that Browne could bring a due process claim under the Fourteenth Amendment of the Constitution of the United States because she could have a federal liberty interest in her reputation. Based on these rulings, the Superior Court provided leave to Appellants to amend their complaint consistent with the Court's opinion.

In June 2014, Appellants filed an amended complaint asserting (1) separate requests for de novo review of their termination hearings N.J. Stat. Ann. § 40A:9-25 (Counts One and Three); (2) separate claims for political discharge, also under N.J. Stat. Ann. § 40A:9-25 (Counts Two and Four); and (3) due process claims by Browne under the Constitution of the United States and the New Jersey Constitution (Counts Five and Six). The County Defendants removed the case to the United States District Court for the District of New Jersey. After concluding discovery in April 2015, Appellants filed a motion for summary judgment on all claims, and the County Defendants filed a cross-motion as to the same.

4

The District Court granted in part the County Defendants' motion and denied the Appellants' motion. First, it held that the law of the case doctrine precluded Browne from seeking a de novo review of the termination hearings.[1] Second, due to a lack of state case law interpreting N.J. Stat. Ann. § 40A:9-25, the District Court applied First Amendment law, which also prohibits the termination of public employees for political reasons. Relying on *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Lane v. Franks*, 134 S. Ct. 2369 (2014), the District Court dismissed both political termination claims, finding that, based on Appellants' attestations alone, the advice that they allegedly provided Walton clearly fell within the scope of their employment. Third, the District Court dismissed Browne's due process claim regarding her liberty interest in her reputation because she failed to demonstrate that the County Defendants publicly disseminated information that would be injurious to Browne's stature. It dismissed Browne's state due process claim for the same reason, and declined to exercise supplementary jurisdiction over Pasqua's claim for de novo review.[2]

Accordingly, the District Court dismissed with prejudice all of Appellants' claims, save for Pasqua's claim for de novo review. Appellants timely filed this appeal.

---

[1] Browne does not contest this holding on appeal.

[2] The District Court found it appropriate to determine Appellants' state political discharge claims because, *inter alia*, their resolution involved the application of federal constitutional law. Conversely, Pasqua's remaining claim addressing her right to de novo review was based solely on state law.

5

## II.  JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331, due to original jurisdiction arising from Browne's federal due process claim, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's grant of summary judgment. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 665 (3d Cir. 2016). Thus, we will affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  We view "the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017) (quoting *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011)). To avoid summary judgment, however, the non-movant cannot "rely merely upon bare assertions" or "conclusory allegations." *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

## III.  ANALYSIS

On appeal, Appellants challenge the District Court's dismissal on summary judgment of Brown's federal and state due process claims and of both Appellants' political discharge claims.  For the reasons below, we will affirm the District Court's rulings.

### a.  Browne's Due Process Claims

Pursuant to 42 U.S.C. § 1983, Browne contends that her procedural due process rights provided by the Fourteenth Amendment were violated because the County impugned her reputation without conducting a proper pre-termination hearing.  However, "it is clear that 'reputation alone is not an interest protected by the Due Process Clause.'"  *Dee v.*

6

*Borough of Dunmore*, 549 F.3d 225, 233 (3d Cir. 2008) (emphasis omitted) (quoting *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1993)). In instances where plaintiffs allege that they were deprived of their liberty interest in their reputation, we apply the so-called "stigma-plus" test enunciated in *Hill v. Borough of Kutztown*:

> In the public employment context, the "stigma-plus" test has been applied to mean that when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, it deprives the employee of a protected liberty interest. The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus." When such a deprivation occurs, the employee is entitled to a name-clearing hearing.

455 F.3d 225, 236 (3d Cir. 2006) (citations and internal quotation marks omitted). Therefore, "[t]o satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s)" "were made publicly, and . . . were false." *Id*.

Here, the District Court determined that Appellants failed to satisfy this prong. We agree. There is no evidence in the record that the County Defendants publicly disclosed any material information related to Browne's alleged oversights, including in her statement of material facts. Rather, she argues that the County Defendants transgressed by making this information public during her nine-day hearing. Not only is this argument asserted for the first time on appeal and is therefore waived, *see United States v. Dupree*, 617 F.3d 724, 727 (3d Cir. 2010), but it is also without merit. The hearing itself cannot be the source of Browne's injury because New Jersey has long recognized an absolute privilege that immunizes litigants from defamation actions for participating in administrative proceedings. *See Senna v. Florimont*, 958 A.2d 427, 435 n.7 (N.J. 2008) ("Absolute

7

privileges completely immunize statements 'made in . . . administrative proceedings.'" (quoting *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 516 A.2d 220, 226 (N.J. 1986))). This privilege, the New Jersey Supreme Court has stated, is necessary in the judicial context "to ensure that participants in the judicial process act without fear of the threat of ruinous civil litigation when performing their respective functions" and is "essential for the proper functioning of our criminal and civil justice systems and is not at odds with the history and purposes of § 1983." *Loigman v. Twp. Comm. of Twp. of Middletown*, 889 A.2d 426, 434-35 (N.J. 2006). In light of this absolute privilege, Browne's contention cannot succeed as a matter of law.

For these same reasons, we will also affirm the District Court's decision to dismiss Browne's state due process claim. As with the federal standard, New Jersey law requires that a plaintiff prove public dissemination of a statement that harms his or her reputation in order to succeed on a reputational due process claim. *See Doe v. Poritz*, 662 A.2d 367, 417 (1995) ("Public notification implicates a privacy interest in nondisclosure, and therefore triggers due process."); *id*. at 420 ("[P]laintiff would be stigmatized only to the extent that the fact of his incarceration and the crime for which he was convicted might be publicly known.").

Separately, Browne also argues that the hearing did not comport with due process. This contention, however, has no support in the record. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). As Browne concedes in her brief, she

8

was formally charged, was represented by counsel, and was afforded nine days of hearings that developed a record containing the testimony of eight witnesses, twenty-six exhibits from the County Defendants, sixty-seven exhibits from Appellants, and resulted in both a preliminary and final written decision by the Hearing Officer. That the County Defendants relied on the Preliminary Report to fire Browne is of no constitutional significance. *See id.* ("The essential requirements of due process . . . are notice and an opportunity to respond.").[3]

Accordingly, for the aforementioned reasons, we will affirm the District Court's decision to dismiss Browne's procedural due process claim.

### b. **Pasqua and Browne's Political Discharge Claims**

Appellants each claim that they were discharged for political reasons for advising Walton to increase the County's tax rate, in violation of N.J. Stat. Ann. § 40A:9-25, which states that "[n]o officer or employee shall be removed from his office or position for political reasons." N.J. Stat. Ann. § 40A:9-25. Recognizing that there is a lack of case law applying the political discharge provision of N.J. Stat. Ann. § 40A:9-25, the District Court looked to First Amendment law of political discharge, which prohibits the termination of public servants on the basis of their political affiliation. *See Galli v. New Jersey*

---

[3] Contrary to Appellants' contentions, the Preliminary Report contained various factual findings and reasonable rationales for its recommendation that they be terminated, including: (1) that, based on the testimony of a CPA under contract with the County, Appellants' improper conduct cost the County $934,264; (2) that Appellants refused to sign reports that are required to be issued by their offices, which "put the County's ability to obtain federal grants at risk," A103; and (3) that Appellants acted insubordinately by refusing orders from the County Administrator, their superior.

9

*Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007). We agree to the logic of that approach, on the basis that both types of claims are substantially similar.

To succeed on a claim for political discharge, a plaintiff must show, among other elements, that "she was engaged in constitutionally protected conduct." *Id*. at 271. "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. Therefore, the "critical question" for determining whether a public employees' speech is protected under the First Amendment "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 134 S. Ct. at 2379. [4]

Here, as the District Court aptly recognized, Appellants' own joint certification provides that their advice to Walton about the tax increase fell within the ambit of their scope of employment.[5] Pasqua was employed as the County's Chief Financial Officer and

---

[4] Appellants incorrectly contend that the District Court misapplied *Lane*, which also provides that the First Amendment protects speech by a public official that "simply relates to public employment or concerns information learned in the course of public employment." 134 S. Ct. at 2379. Appellants' advice to Walton did not merely "relate to" or "concern" their job responsibilities because, as discussed immediately below, it explicitly implicated the state of the County's budget, the development of which fell directly within Appellants' job responsibility. The District Court therefore did not err. *See id*. at 2378 ("[T]he First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, *outside the scope of his ordinary job responsibilities*." (emphasis added)).

[5] Appellants proffer two additional arguments on this matter, neither of which are compelling. First, they contend that the District Court improperly dismissed their request to submit testimony to support their contention that two Board members told them that they

10

Treasurer, and Browne as the County's Director of Finance. They certified to the District Court that (1) their responsibilities included "assist[ing] with the development of the budget for the County" and that the County's flat tax rate "was compromising the County fiscally," A66; (2) that their advice to Walton constituted their "professional opinion," A68; and (3) that the County retaliated against them for "performing the responsibilities of [their] offices" and "expressing [their] opinion as a part of [their] job responsibilities," A66-67. Even in their brief, Appellants state that "the responsibilities of their positions required them to make [a] recommendation on the fiscal status of the County during the County Budget process which included a recommendation as to whether the tax rate should be raised . . . ." Appellant Br. at 48. Based on Appellants' recitations alone, we hold that they acted within the scope of their employment and that they did not engage in protected

---

had a "target on their backs." Appellant Br. at 49. However, such supplementary testimony is irrelevant in light of our holding that Appellants did not engage in constitutionally protected speech.

Second, Appellants state that the District Court "erred in resolving credibility issues" in the County Defendants' favor when it did not impute the knowledge of Appellants' advice from Walton and J. Matthew Holt—another Board member—to the rest of the Board. The District Court, however, made no such credibility determination. Rather, it drew that inference because Appellants did "not claim to have ever informed anyone else of [Appellants'] advice, or that Mr. Walton and Mr. Holt passed [Appellants'] advice along to the other members of the Board." A25. This inference is perfectly acceptable under the summary judgment standard. *See Moon v. Breathless Inc*, 868 F.3d 209, 212 (3d Cir. 2017) ("[A]ll justifiable inferences are to be drawn in [the nonmovant's] favor, but the mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment" (internal quotation marks omitted)).

11

speech.  The District Court therefore properly dismissed their political discharge claims on summary judgment.[6]

## IV.    CONCLUSION

For the reasons above, we will affirm the District Court's order granting summary judgment in favor of the County Defendants.

---

[6] Appellants curiously argue that the law of the case doctrine prohibits summary judgment from being granted on their political discharge claims because the Superior Court denied the County's original motion to dismiss Browne's claim.  Although the Superior Court's determination afforded Appellants the opportunity to re-plead their political discharge claims, it is elementary that the court did nothing to (nor could it) assure that Appellants' claims would survive summary judgment.

Separately, relying on *Town of W. N.Y. v. Bock*, 186 A.2d 97 (N.J. 1962), Appellants also argue that the District Court independently erred by not considering the concept of "progressive discipline."    Appellant Br. at 44-45.  *Bock*, however, imposes no such stringent requirement.  *See* 186 A.2d at 109 ("[An employee's past record] *may* be resorted to for guidance in determining the appropriate penalty for the current specific offense." (emphasis added)).