**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5017-18T3

TARA LUEDDEKE,

     Plaintiff-Appellant,

v.

VINCENT MAZZA and NATIONAL
SECURITIES CORP.,

     Defendants-Respondents.

_____

Submitted January 8, 2020 – Decided January 29, 2020

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4771-18.

Bruce E. Baldinger, LLC, attorneys for appellant (Bruce Eric Baldinger, on the briefs).

Baker & Hostetler, LLP, and Freeman Mathis & Gary, LLP, attorneys for respondent National Securities Corp. (Daniel J. Buzzetta, Erica Barrow, and Joshua G. Ferguson, on the brief).

PER CURIAM

Plaintiff Tara Lueddeke appeals from a July 15, 2019 order compelling arbitration and dismissing her complaint without prejudice. We affirm.

Plaintiff filed suit against defendants National Securities Corp. (NSC) and Vincent Mazza for fraud, breach of fiduciary duty, breach of contract, violation of state and federal securities laws, violation of the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, invasion of privacy, and emotional distress. Plaintiff transferred funds she received from an inheritance to NSC for investment. Mazza, a stockbroker employed by NSC, assisted plaintiff with opening her NSC accounts and made investment trades on her behalf. At the time, Mazza was in a long-term relationship with plaintiff's stepdaughter.

To open investment accounts with NSC, plaintiff was required to sign an Arbitration Agreement.[1] The document, entitled "Pre-Dispute Arbitration Agreement" in large font, is two pages in length. NSC will not open an investment account without a client executing the Arbitration Agreement.

Pursuant to the terms of the Arbitration Agreement "[b]y signing an arbitration agreement, the parties agree[d]" to: (1) relinquish "the right to sue

---

[1] Plaintiff signed two identical arbitration agreements associated with her two investment accounts at NSC.

each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed;" (2) accept an arbitration award as final and binding; (3) conduct limited discovery; (4) waive an explanation by the arbitrator in support of an award, unless all parties so request; (5) use arbitrators familiar with the securities industry; (6) agree upon time limits for asserting a claim; and (7) incorporate "[t]he rules of the arbitration forum in which the claim is filed and any amendments thereto."

The Arbitration Agreement also stated:

> All controversies that may arise between me and my Broker/Dealer concerning any subject matter, issue or circumstance whatsoever (including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between me and my Broker/Dealer whether entered into or arising before, on or after the date this investment is made[)], shall be determined by arbitration in accordance with the rules then prevailing of the Financial Industry Regulatory Authority (FINRA) or any United States securities self-regulatory organization or United States securities exchange of which the person, entity or entities against whom the claim is made is a member, as I may designate.

A few months after Mazza began handling her investments with NSC, plaintiff alleged defendants made unauthorized purchases of securities contrary to her best interests and stated wishes. According to plaintiff, the unauthorized

A-5017-18T3

transactions resulted in significant financial losses to her and substantial commissions to defendants. In addition, plaintiff claimed defendants improperly disclosed her investment account information to third parties.

After plaintiff filed her complaint, NSC moved to dismiss the complaint and compel arbitration in accordance with the Arbitration Agreement.[2] In a July 15, 2019 memorandum of decision, Judge Kimberly Espinales-Maloney dismissed plaintiff's complaint without prejudice and compelled arbitration in accordance with the parties' signed agreement. The judge concluded the Arbitration Agreement signed by plaintiff was unambiguous and clearly encompassed "all controversies" between plaintiff and NSC, involving "any subject" matter, would be submitted to arbitration. She further held that the parties were giving up the right to sue each other in court, including a right to a trial by jury.

On appeal, plaintiff claims the Arbitration Agreement failed to specifically advise of the waiver of her right to pursue statutory claims in court.

---

[2] When NSC filed its motion to dismiss plaintiff's complaint, Mazza had not yet answered the complaint. The parties entered into a consent order extending Mazza's time to file an answer depending on the outcome of NSC's motion. In the event NSC prevailed on its motion, the consent order provided Mazza would be entitled to the same relief.

In addition, she argues the Arbitration Agreement was unenforceable because it was confusing on its face.

We review the enforceability of an arbitration agreement de novo. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). Because "[t]he enforceability of arbitration provisions is a question of law," the trial court's decision is not given deference. Ibid. See Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

Plaintiff relies on Moon v. Breathless Inc., 868 F.3d 209 (3d Cir. 2017) in support of her argument that the Arbitration Agreement is invalid and unenforceable. In Moon, the Third Circuit, applying New Jersey law, established a three-part test to determine arbitrability of New Jersey statutory claims. Id. at 214. The Moon court held that for an arbitration clause to be valid, it must: (1) "identify the general substantive area that the arbitration clause covers"; (2) "reference the types of claims waived by the provision"; and (3) "explain the difference between arbitration and litigation." Ibid. (citing Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124

(2001)). "[T]he clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her [or his] right to bring her [or his] claims in court or have a jury resolve the dispute." Ibid. (quoting Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 447 (2014)).

We reject plaintiff's argument that the Arbitration Agreement failed to satisfy the Moon test. Here, the parties expressly consented to arbitrate "[a]ll controversies that may arise between [the investor] and [their] Broker/Dealer . . . ." By agreeing to the broad language "all controversies," plaintiff's statutory causes of action were encompassed within the Arbitration Agreement. The Arbitration Agreement also governed claims "concerning any subject matter, issue or circumstance whatsoever []including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between me and my Broker/Dealer . . . ." This language unambiguously incorporated all claims asserted by plaintiff, including her statutory claims.

Moreover, the Arbitration Agreement clearly and explicitly explained the difference between arbitration and litigation in court. By signing the Arbitration Agreement, "[a]ll parties . . . [gave] up the right to sue each other in court, including the right to a trial by jury . . . ." The Arbitration Agreement further

noted that "[a]rbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited."

Having reviewed the record, for reasons stated by Judge Espinales-Maloney in her thorough written decision issued with the order under appeal, we are satisfied the Arbitration Agreement adequately, broadly, and unambiguously set forth the claims to be arbitrated by the parties, and expressly waived the parties' right to proceed in court by way of a jury trial. It is therefore valid and enforceable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7