**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3346-22
              A-3372-22

MARIA AGUIRRE,
ANDREA PALACIOS,
and LORENA VARAS,

       Plaintiffs-Respondents,

v.

CDL LAST MILE SOLUTIONS,
LLC, ANTHONY CURCIO, and
KATTY PONCE,

       Defendants-Appellants,

and

SUBCONTRACTING
CONCEPTS, LLC, d/b/a SCI,

       Defendant.
_____

MARIA AGUIRRE,
ANDREA PALACIOS,
and LORENA VARAS,

       Plaintiffs-Respondents,

v.

CDL LAST MILE SOLUTIONS,
LLC, ANTHONY CURCIO, and
KATTY PONCE,

 Defendants,

and

SUBCONTRACTING
CONCEPTS, LLC, d/b/a SCI,

 Defendant-Appellant.

_____

Argued January 9, 2024 – Decided February 26, 2024

Before Judges Natali and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1172-23.

Theodore M. Eder argued the cause for appellants CDL Last Mile Solutions, LLC, Anthony Curcio and Katty Ponce, in A-3346-22 (Weber Gallagher Simpson Stapleton Fires & Newby LLP, attorneys; Theodore M. Eder, of counsel and on the briefs).

Peter Paul Perla, Jr., argued the cause for appellant Subcontracting Concepts, LLC d/b/a SCI, in A-3372-22 (PRB Attorneys at Law, LLC, attorneys; Peter Paul Perla, Jr., of counsel and on the briefs).

Scott Simpson (Menken Simpson & Rozger LLP) of the New York bar, admitted pro hac vice, argued the cause for respondents (Newman, Simpson & Cohen, LLP, attorneys; Scott Simpson, Raya F. Saksouk (Menken

2

Simpson & Rozger LLP) of the New York bar, admitted pro hac vice, Jason J. Rozger, Daniel Jay Cohen, and Daniel C. Stark, on the briefs).

PER CURIAM

In this consolidated appeal, defendants CDL Last Mile Solutions, LLC (CDL), Anthony Curcio, and Katty Ponce (collectively, the CDL defendants), and defendant Subcontracting Concepts, LLC d/b/a SCI (SCI), challenge two Law Division orders that denied their respective motions to compel arbitration and to dismiss the putative class action complaint filed by plaintiffs Maria Aguirre, Andrea Palacios, and Lorena Varas. We affirm for the following reasons.

First, we conclude New Jersey law applies, rather than New York law as identified in the agreements, because (a) New Jersey has a materially greater interest than New York in the arbitrability of disputes related to the agreements at issue here, (b) New Jersey law would apply absent any choice of law provision, and (c) New York law is contrary to New Jersey's fundamental public policy of ensuring any waiver of the right to a jury trial is knowing, intelligent, and voluntary. On that point, we conclude the arbitration agreements here are unenforceable because they fail to adequately "explain that the plaintiff[s] [are] giving up [their] right to bring [their] claims in court or have a jury resolve the

3

dispute," as required by Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 447 (2014).

As we further detail below, we do not reach the applicability of the interstate employment contract exemption to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, because, even assuming the FAA applies, it permits states to regulate contracts, including those containing arbitration provisions, using generally applicable state law such as that set forth in Atalese. Finally, in light of our decision finding the arbitration agreement unenforceable, we conclude the class action waiver, which by its express terms applies only to arbitration proceedings, is inapplicable under these circumstances.

## I.

We begin by reciting the relevant facts in the motion record. CDL is a Delaware LLC, specializing in "logistics and last-mile delivery services." It is headquartered in New York and operates a warehouse in Bergen County. Plaintiffs, residents of New Jersey, work as delivery drivers for CDL, make deliveries exclusively in New Jersey, and report to the Bergen County warehouse.

SCI is a Delaware LLC, headquartered in New York, that "provides third-party administrative support for courier and logistics companies." Since 2012,

SCI has provided services to CDL, including payroll processing and delivery driver onboarding.

Defendant Curcio is the owner, manager, and president of CDL and a New York resident. Defendant Ponce is a CDL dispatcher at the Bergen County warehouse who is alleged to have "authority to hire, fire, and discipline . . . drivers" and "to assign or reassign their delivery routes."

On March 2, 2023, plaintiffs filed a putative class action complaint seeking damages, injunctive and declaratory relief, and attorneys' fees and costs. The complaint alleges the class includes at least one hundred people, identified as "all delivery drivers who performed work for [d]efendants in the [s]tate of New Jersey from March 2, 2017, until [d]efendants cease their unlawful acts." Plaintiffs claimed, first, defendants misclassified the class members as independent contractors to avoid paying overtime wages in violation of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a4(b) (WHL), and second, defendants unlawfully deducted from the class members' wages in violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.4 (WPL).

Plaintiffs further alleged drivers hired to work for CDL are "required to sign an independent contractor agreement with SCI," entitled "Owner/Operator Agreement" (the Agreements). CDL is not a party to the Agreements and while

not directly named, is referred to in the Agreements as the "logistics broker" or "customer." The Agreements signed by each plaintiff contain the following arbitration clause:

> In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, or service agreement between Owner/Operator and SCI's clients or any permiss[i]ble statutory disputes, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. . . . If resolution of the dispute is not reached within [sixty] days . . . disputes that are within the jurisdictional maximum for small claims will be settled in small claims court where the Owner/Operator resides.
>
> All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts and have not passed the statute of limitations within the locality of the Owner/Operator's residence will be finally settled by arbitration under the policies of the Federal Arbitration Act and New York State's Arbitration provisions. . . .
>
> Neither you nor SCI shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class . . . .
>
> [(Emphasis supplied).]

The Agreements also state they "shall be governed by the laws of the State of New York." At the end of each of the Agreements, just above the signature area, an all-caps notice informs: "THIS CONTRACT CONTAINS A BINDING

6

ARBITRATION PROVISION AND CLASS-ACTION WAIVER WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES."  A separate "Independent Contractor Acknowledgement Form" requires acknowledgement of the following:

> You understand you may opt out of the Arbitration provisions within the Owner Operator Agreement by notifying SCI in writing, within ten (10) days of the date below . . . .  The writing should contain the name and contact information of each person opting out, and a clear statement indicating you are opting out of arbitrate [sic].  By not opting out you are subject to the dispute resolution provisions contained in the Owner Operator Agreement.

The CDL defendants and SCI each moved to dismiss under Rule 4:6-2 and to compel arbitration.  The CDL defendants contended the court should apply New York law, consistent with the choice of law provision, in determining the enforceability of the arbitration clause in the Agreements, but also argued the clause would be enforceable under either New York or New Jersey law.  SCI argued the court should apply the FAA as provided in the Agreements, as the exemption for employment contracts involving interstate commerce set forth in

9 U.S.C. § 1 did not apply.[1]  In the alternative, it joined the CDL defendants in contending New York law should control.

Plaintiffs responded by arguing New Jersey law applied, as New York law concerning enforceability of arbitration agreements was contrary to New Jersey public policy regarding what is required to establish a waiver of the right to a jury trial.  Under New Jersey law, plaintiffs argued, the Agreements did not include "clear and unambiguous language" explaining the right being waived and therefore were unenforceable.

On June 27, 2023, the court issued two nearly-identical orders denying the CDL defendants' and SCI's motions to compel arbitration and to dismiss the complaint, accompanied by a rider in which it detailed its reasoning.  First, the court explained "[c]ourts should generally apply state-law contract principles to determine whether the parties agreed to arbitrate."  It then applied New Jersey law to the question of enforceability of the arbitration clause.

Under Atalese, 219 N.J. at 447, it noted while "no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights," a valid clause "must explain that the plaintiff is giving up her right to bring her

---

[1] 9 U.S.C. § 1 provides, in part, "nothing [in the FAA] shall apply to contracts of employment of . . . any other class of workers engaged in foreign or interstate commerce."

claims in court or have a jury resolve the dispute." Here, the court found "the arbitration clause is devoid of any language that would put the plaintiffs, without extensive knowledge of arbitration, on notice that they were waiving their right to a jury trial or having their disputes settled in court by signing the agreement." It noted the language of the clause "does not 'unmistakably' establish that arbitration involves waiver to a jury trial."

The court reasoned, as stated in Atalese, 219 N.J. at 442, "an average member of the public may not know—without some explanatory comment—that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Further, the court found "Atalese establishes that 'arbitration' is not self-defining, and the provision in this case goes no further in defining the term." It also determined the admonition at the end of the contract "does nothing to broaden the scope of the class-arbitration waiver itself" as it failed to provide "a clear explanation of what rights the plaintiffs were waiving."

The court rejected defendants' argument that the Agreements "did not need to explicitly state that the arbitration provision would waive the plaintiffs' right to a jury trial because plaintiffs were acting as representatives of their business when signing the contract, rather than as individuals." It found the plaintiffs were individual delivery drivers and use of a separate legal entity "does not

9

imply that they possess the business acumen to comprehend the implications of arbitration." Additionally, the court noted "there is no case law to support the notion that businesses are not entitled to the same clarity in arbitration provisions as individuals."

In conclusion, the court found "New Jersey case law requiring an unambiguous waiver of the right to go to court and have a jury decide your dispute had existed for years, yet the arbitration clauses in the three most recent contracts signed by the plaintiffs are devoid of these fundamental requirements." Because an arbitration clause lacking these requirements is unenforceable under Atalese, 219 N.J. at 436, the court determined the plaintiffs could not be compelled to arbitrate and the class-action waivers tied directly to the arbitration clause were moot.

The court thereafter submitted a written amplification pursuant to Rule 2:5-1(d), in which it further explained its decision to apply New Jersey law. It noted defense counsel cited in their moving papers, and the parties discussed at oral argument, an unpublished federal district court case involving "a contract enormously similar to the contracts in the case at hand," Easterday v. USPack

Logistics, LLC, No. 15-07559 (D.N.J. Dec. 4, 2020).[2]  After reviewing the federal judge's and magistrate's decisions in that case, the court "chose to follow the Third Circuit's precedent in Roadway [Package System, Inc. v. Kayser, 257 F.3d 287, 288-89 (3d Cir. 2001)] wherein the Third Circuit found general choice of law provisions shed little light on what law will govern arbitration provisions."  Therefore, it reasoned, "the choice of law provision in the contracts in this case is not instructive as to the choice of law for the arbitration clauses."

The court explained it also found a conflict existed between New York and New Jersey law "with regards to the enforceability of arbitration provisions when the provisions are silent as to waiving the right to a jury trial."  After conducting a choice of law analysis using the most significant relationship test, the court "found the contacts overwhelmingly relate to New Jersey."  It thus concluded New Jersey law applied.  These consolidated appeals followed.

## II.

We review an order compelling or declining to compel arbitration de novo.  Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019).  As the enforceability of arbitration provisions is a question of law, no deference is owed

---

[2]  Easterday is a non-precedential, unpublished opinion and as such, does not inform our decision.  See R. 1:36-3.

to the trial court's interpretation.  Ibid.  In such a review, we remain "mindful of the strong preference to enforce arbitration agreements, both at the state and federal level."  Hirsch v. Amper Fin. Svcs., LLC, 215 N.J. 174, 186 (2013).  Similarly, we review de novo choice-of-law determinations.  Cont'l Ins. Co. v. Honeywell Int'l., Inc., 234 N.J. 23, 46 (2018).

Before us, both the CDL defendants and SCI contend the court erred in denying their motions to dismiss and compel arbitration.  In support, they reprise their arguments:  (1) the FAA or New York law, as provided in the Agreements, should control; (2) the Agreements are enforceable under federal, New York, or New Jersey law; and (3) the Agreements' class action waiver is also applicable.

As an initial matter, we conclude the court's reliance on Roadway Package, 257 F.3d at 288-89, was misplaced.  In that case, the Third Circuit concluded "the presence of a generic choice-of-law clause tells us little (if anything) about whether contracting parties intended to opt out of the FAA's default standards and incorporate ones borrowed from state law."  Id. at 296.  In this case, however, the Agreements contain not only a generic choice-of-law clause, but specify New York law applies to arbitration as well.  Nevertheless, "it is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the

ultimate conclusion." Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)).

Our analysis begins with a determination as to which state's law controls. The CDL defendants contend the court must apply New York law, consistent with the Agreements' choice of law provision. In this regard, they correctly note, under North Bergen Rex Transportation v. Trailer Leasing Co., 158 N.J. 561, 568-69 (1999), New Jersey courts uphold a contract's choice of law provision unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> [Ibid.]

Here, the CDL defendants argue a substantial relationship to New York exists because it is undisputed CDL and SCI are New York companies. Additionally, they contend application of New York law would not be contrary to any fundamental policy of New Jersey. In support, they rely upon Grandvue Manor, LLC v. Cornerstone Contracting Corp., 471 N.J. Super. 135 (App. Div.

13

2022), which they argue demonstrates any difference between New York and New Jersey law is "slight." The CDL defendants also note "a party may not be compelled to arbitrate a dispute unless there is evidence which affirmatively establishes that the parties clearly, explicitly, and unequivocally agreed to arbitrate the dispute" under In re AT&S Transp., LLC v. Odyssey Logistics & Tech. Corp., 803 N.Y.S.2d 118 (App. Div. 2005), a standard they characterize as "exactly the same as New Jersey." Even assuming a difference in the law of the two states, the CDL defendants assert such difference "does not rise to the level of being offensive or repugnant to the public policy of New Jersey." SCI joins the CDL defendants, noting "[i]t is well-settled that a parties' choice of law provision must be honored" under North Bergen Rex Transportation, 158 N.J. at 568.

Plaintiffs respond by arguing the court properly found the New York choice-of-law provision "was void as against New Jersey public policy" which aims to protect "'average' individuals in asymmetric negotiations (particularly when a waiver of rights is involved.)" They contend New York "does not require courts to conduct a substantive inquiry into whether the arbitration agreement contains a fair and effective waiver of rights in the sense contemplated by Atalese." Further, they maintain New Jersey has a materially greater interest in

this matter than New York, as plaintiffs live in New Jersey, report to a New Jersey warehouse, make deliveries exclusively in New Jersey, signed the Agreements in New Jersey, suffered injuries in New Jersey, and their claims involve vindication of their rights as New Jersey workers under the New Jersey WHL and WPL. In contrast, they contend the only connections to New York are CDL's, SCI's, and Curcio's residences there. We agree.

Generally, "when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." Grandvue, 471 N.J. Super. at 142 (quoting Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341 (1992)). New Jersey follows the approach set forth in section 187 of the Restatement (Second) of Conflict of Laws and will apply the law of the state chosen by the parties unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties.

15

[Grandvue, 471 N.J. Super. at 142 (quoting Instructional Sys., 130 N.J. at 341-42).]

Here, New York has a substantial relationship to the parties because CDL, Curcio, and SCI are residents of that state. See Instructional Sys., 130 N.J. at 342 (finding section 187(a) inapplicable because California had a substantial relationship to the parties as defendant was headquartered there). Thus, section 187(a) is inapplicable and for New Jersey law to apply, (1) New Jersey must have "a materially greater interest than [New York] in the determination of" the Agreements' arbitrability, (2) New Jersey law must be applicable in the absence of an effective choice of law, and (3) the application of New York law must be "contrary to a fundamental policy" of New Jersey. Grandvue, 471 N.J. Super. at 142 (quoting Instructional Sys., 130 N.J. at 342).

We are convinced, based on the facts in the motion record, New Jersey has a "materially greater interest" with respect to disputes under the Agreements than New York. Ibid. (quoting Instructional Sys., 130 N.J. at 342). Indeed, New York has little to no connection to this matter beyond CDL's, SCI's, and Curcio's residences there. Meanwhile, plaintiffs live and work in New Jersey, CDL operates a warehouse in New Jersey, the Agreements were executed in New Jersey, and plaintiffs' claims implicate the New Jersey WHL and WPL and involve alleged wage injuries suffered in New Jersey. These same facts,

16

combined with plaintiffs' choice of New Jersey as forum, strongly support the application of New Jersey law absent the choice of law provision.

Further, we are also satisfied the application of New York law here would be "contrary to a fundamental policy" of New Jersey. Ibid. (quoting Instructional Sys., 130 N.J. at 342). It is undisputed both New Jersey and New York favor arbitration as a means of dispute resolution. See Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133 (2020) (noting "the affirmative policy of [New Jersey], both legislative and judicial, favors arbitration as a mechanism of resolving disputes" (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002))); Ferrarella v. Godt, 15 N.Y.S.3d 180, 183 (App. Div. 2015) (holding "[t]he announced policy of [New York] favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties" (quoting In re Nationwide Gen. Ins. Co. v. Inv'rs. Ins. Co. of Am., 332 N.E.2d 333, 335 (N.Y. 1975))).

New Jersey has a long standing policy of protecting the right to access its courts. Article I, paragraph 9 of the New Jersey Constitution provides "[t]he right of trial by jury shall remain inviolate." "Although rights may be waived, courts 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" Mazdabrook Commons Homeowners' Ass'n v. Khan, 210

17

N.J. 482, 505 (2012) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "To be valid, waivers must be knowing, intelligent, and voluntary." Ibid.

In that vein, our Supreme Court in Atalese intended "to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." 219 N.J. at 444 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)). Accordingly, as we detail further below in section III, the Court held an enforceable arbitration clause "at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Id. at 447.

In contrast, to determine whether the parties agreed to arbitrate, New York courts "perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration." Grandvue, 471 N.J. Super. at 144 (quoting Nationwide, 332 N.E.2d at 335). The court's inquiry ends "[o]nce it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract." Ibid. (quoting Nationwide, 332 N.E.2d at 335); see also Ferrarella, 15 N.Y.S.3d at 183 (holding "[o]nce it is determined that the parties have agreed to arbitrate the

18

subject matter in dispute, the court's role has ended").  Further, "New York courts interfere 'as little as possible with the freedom of consenting parties' to submit disputes to arbitration."  Ibid. (quoting In re 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp., 575 N.E.2d 104, 107 (N.Y. 1991)).

Protecting individuals' rights to sue and to a jury trial, and ensuring any waiver of those rights is knowing, intelligent, and voluntary are unquestionably fundamental policies of New Jersey.  Contrary to New Jersey law in this respect, New York law does not specifically require an arbitration clause explain that agreement thereto involves waiving the right to a jury trial, and defendants have cited no precedent to the contrary.  Therefore, we are satisfied application of New York law in this circumstance would be contrary to a fundamental policy of New Jersey and accordingly apply New Jersey law.

We are convinced Grandvue does not compel a different result.  First, contrary to the CDL defendants' contention, in that case we affirmed the trial court's application of New Jersey law, not New York law.  Grandvue, 471 N.J. Super. at 142, 146.  Next, while we acknowledge certain superficial similarities between the facts of Grandvue and those before us, at bottom we conclude these circumstances are distinguishable.  Grandvue involved a contract for construction of a $10 million home in New York, id. at 139-40, while the

Agreements here concern the terms of delivery services provided by plaintiffs in New Jersey. As we detail below in section III, plaintiffs here are not the "sophisticated" parties involved in Grandvue. Id. at 146.

### III.

Next, the CDL defendants and SCI maintain the arbitration provision of the Agreements is enforceable even under New Jersey law and controls the disputes at issue. In support, they note the court must examine "whether the agreement to arbitrate all, or any portion of a dispute is 'the product of mutual assent, as determined under customary principles of contract law,'" under Arafa v. Health Express Corp., 243 N.J. 147, 171 (2020). Further, defendants assert the court must "preserve the parties' intent to arbitrate" under Arafa and the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36 (NJAA). They argue the arbitration clause in the Agreements "clearly and unambiguously describe[s] the entire dispute resolution process," and plaintiffs were given the opportunity to opt-out of arbitration. Further, the CDL defendants assert plaintiffs are sophisticated negotiators who operate their own businesses, and there was no evidence plaintiffs did not understand what they were waiving.

Plaintiffs respond the arbitration clause in the Agreements fails to meet the requirements of Atalese as it "do[es] not distinguish between arbitration and

litigation," "explain what arbitration is," "indicate how arbitration is different from a proceeding in a court of law," or mention the words jury or waiver, except in the context of the class action waiver. Relying upon Moon v. Breathless Inc., 868 F.3d 209, 214 (3d Cir. 2017), they argue an enforceable arbitration agreement must (1) "identify the substantive areas it purports to cover," (2) "reference the types of claims waived," and (3) "explain the difference between arbitration and litigation using clear and unambiguous language to inform the parties of their legal rights and their intent to surrender those rights." Plaintiffs argue the arbitration clause in the Agreements here fails all three prongs, as it does not explain which areas and claims are covered, nor does it clearly explain the rights to be waived.

Plaintiffs also dispute the CDL defendants' claim of their sophistication, contending they are delivery drivers performing manual labor with "extremely limited control over [their] work." Even though some plaintiffs may work through their own business entity, they contend this does not change the nature of the work they perform or their relationships to CDL and SCI. Additionally, they note their agreement to "two intrinsically unconscionable contract terms," requiring them to waive "their statutory rights to attorney's fees and punitive

21

damages," demonstrates their lack of sophistication and the disparity in bargaining power between plaintiffs and SCI. We agree with plaintiffs.

The NJAA "is nearly identical to the FAA and enunciates the same policies favoring arbitration." Arafa, 243 N.J. at 167. "[T]he NJAA will apply unless preempted even without being explicitly referenced in an arbitration agreement." Id. at 169. However, "[a]rbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable." Atalese, 219 N.J. at 441.

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Id. at 442 (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). Accordingly, to be enforceable, an arbitration agreement must clearly state that the parties are agreeing to arbitrate and are giving up the right to pursue a claim in court. In that regard, our Supreme Court has explained:

> Mutual assent requires that the parties have an understanding of the terms to which they have agreed. "An effective waiver requires a party to have full knowledge of his [or her] legal rights and intent to surrender those rights." Knorr v. Smeal, 178 N.J. 169, 177 (2003). "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have [his

22

or] her claims and defenses litigated in court." <u>NAACP of Camden Cnty. E.</u>, 421 N.J. Super. at 425.

[<u>Ibid.</u> (citations reformatted).]

Like other waivers of statutory or constitutional rights, the Court noted "because arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" <u>Id.</u> at 442-43 (quoting <u>NAACP of Camden Cnty. E.</u>, 421 N.J. Super. at 425). "Although an arbitration clause need not identify 'the specific constitutional or statutory right guaranteeing a citizen access to the courts' that are being waived, it must 'at least in some general and sufficiently broad way' convey that parties are giving up their right to bring their claims in court or have a jury resolve their dispute." <u>Barr v. Bishop Rosen & Co., Inc.</u>, 442 N.J. Super. 599, 606 (App. Div. 2015) (quoting <u>Atalese</u>, 219 N.J. at 447); <u>see also</u> <u>Moon</u>, 868 F.3d at 214 (distilling New Jersey jurisprudence and concluding valid arbitration agreement must "identify the substantive area that the arbitration clause covers," "reference the types of claims waived," and "explain the difference between arbitration and litigation"). "An arbitration agreement that fails to 'clearly and unambiguously signal' to parties that they are surrendering their right to pursue a judicial remedy renders such an agreement

unenforceable." Barr, 442 N.J. Super. at 606 (quoting Atalese, 219 N.J. at 444, 448).

As we explained in County of Passaic v. Horizon Healthcare Services, Inc., 474 N.J. Super. 498, 503-04 (App. Div. 2023), the concern described in Atalese regarding those who might not be "aware of the fact that an agreement to arbitrate may preclude the right to sue in a court or invoke the inestimable right of trial by jury . . . vanishes when considering individually-negotiated contracts between sophisticated parties—often represented by counsel at the formation stage—possessing relatively similar bargaining power." In other words, "an express waiver of the right to seek relief in a court of law to the degree required by Atalese is unnecessary when parties to a commercial contract are sophisticated and possess comparatively equal bargaining power." Id. at 504.

We are satisfied, applying Atalese and its progeny, the arbitration clause in the Agreements is unenforceable. Although the clause implies some claims will be resolved in "small claims court" while others will go to arbitration, it falls short of the "clear and unambiguous" explanation of rights waived required by Atalese, 219 N.J. at 445. The Agreements do not explain what the "jurisdictional maximum for small claims" is, what arbitration is, or that by

agreeing to it, plaintiffs gave up their right to litigate their claims in court. As our Supreme Court recognized, "[t]he meaning of arbitration is not self-evident to the average consumer, who will not know, 'without some explanatory comment[,] that arbitration is a substitute for the right to have one's claim adjudicated in a court of law.'" Morgan v. Sanford Brown Inst., 225 N.J. 289, 308 (2016) (second alteration in original) (quoting Atalese, 219 N.J. at 442).

While the Agreements describe the procedure arbitration will follow, such as the number of arbitrators on the panel and where it will occur, they do not define arbitration and lack the crucial disclosure that it will replace litigation or a jury trial. An average consumer or delivery driver is not likely to understand, absent further explanation, what arbitration is, how it differs from litigation in court or that it involves no judge or jury, nor are they likely able to distinguish which claims fall within the "jurisdictional maximum for small claims" to be litigated in court. The ability to opt-out of arbitration does nothing to further clarify its meaning.

We find defendants' reliance on Arafa misplaced as each of the two arbitration agreements involved in that case clearly complied with Atalese. Arafa, 243 N.J. at 171-72. Specifically, one agreement stated "[t]he parties voluntarily agree to waive any right to a trial by jury in any suit filed hereunder

25

and agree to adjudicate any dispute pursuant to" further detailed arbitration clauses, and the other provided "BY AGREEING TO ARBITRATE ALL SUCH DISPUTES, THE PARTIES TO THIS AGREEMENT AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND <u>NOT BY WAY OF A COURT OR JURY TRIAL</u>." <u>Id.</u> at 155, 158 (emphasis supplied, caps in original). Here, the Agreements fail to explain that agreeing to arbitration means waiving the right to a jury trial, or even to mention the words "jury trial" at all.

Finally, the record reflects the Agreements were not the product of a sophisticated negotiation, contrary to defendants' contentions. It appears none of the plaintiffs were represented by counsel, nor did the terms of the Agreements substantially differ among the plaintiffs, suggesting the Agreements were similar to "take-it-or-leave-it" contracts of adhesion. <u>See</u> <u>Muhammad v. Cnty. Bank of Rehoboth Beach</u>, 189 N.J. 1, 15 (2006) (noting "the essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars" (quoting <u>Rudbart v. N. Jersey Dist. Water Supply Comm'n.</u>, 127 N.J. 344, 353 (1992))). This also indicates unequal bargaining power between the parties. Accordingly,

the Agreements are closer to consumer contracts, as in Atalese, than commercial contracts, as in County of Passaic or Grandvue.

The parties in County of Passaic were a municipality and a health insurance company with a seventeen-year relationship involving multiple contracts. 474 N.J. Super. at 501, 504. Both were represented by counsel, and the record in that case reflected negotiation of several contracts. Id. at 504-05. Thus, we concluded the parties were sophisticated and possessed relatively equal bargaining power. Id. at 501, 504. Similarly, in Grandvue, we deemed the contractor corporation and couple who, through an LLC, contracted for construction of a $10 million home were sophisticated. 471 N.J. Super. at 139-40, 146. Further, unlike the Agreements before us, the arbitration clause we upheld in that case clearly delineated that the parties had a choice between arbitration or "[l]itigation in a court of competent jurisdiction." Id. at 140.

Plaintiffs are clearly not the type of parties we had in mind in County of Passaic, 474 N.J. Super. at 503-04. The record is devoid of evidence demonstrating any of them were represented by counsel or engaged in individual negotiation of the Agreements. The record demonstrates plaintiffs are individual delivery drivers who perform manual labor for CDL under CDL's rules. That one of the plaintiffs worked through an LLC does not change the

nature of the work she performed or the disparity in bargaining power between plaintiffs and SCI.

Because the Agreements were not the product of a sophisticated negotiation and the arbitration clause therein does not clearly and unambiguously explain the parties are waiving their rights to bring their claims in court or to have a trial by jury, the court correctly found the arbitration agreement is unenforceable.

IV.

SCI contends the court erred by failing to analyze the Agreements' arbitration clauses under the FAA. It notes the FAA exemption in 9 U.S.C. § 1 does not apply here because the Agreements are not contracts of employment or interstate commerce as "[p]laintiffs did not provide their delivery services to SCI." Plaintiffs assert they are transportation workers engaged in interstate commerce and thus clearly fall within the section 1 exemption. They also contend the term "contracts of employment" as used in the section 1 exemption includes independent contractors under New Prime Inc. v. Oliveira, 586 U.S. __, 139 S. Ct. 532 (2019).

Under Shetiwy v. Midland Credit Management, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013), SCI argues a court determining arbitrability under the FAA

A-3346-22

must consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." SCI concludes if both parts of the test are answered in the affirmative, as here, the court has no discretion and must order arbitration. We are not persuaded.

Although the FAA "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration," it generally "preempts state laws that treat arbitration agreements differently from other contracts." Grandvue, 471 N.J. Super. at 145 (quoting Arafa, 243 N.J. at 164-65). Accordingly, an arbitration clause "cannot be invalidated by state-law 'defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" Atalese, 219 N.J. at 441 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)).

However, the FAA "specifically permits states to regulate contracts, including contracts containing arbitration agreements[,] under general contract principles." Grandvue, 471 N.J. Super. at 145 (alteration in original) (quoting Arafa, 243 N.J. at 165). In other words, "New Jersey may 'regulate agreements, including those that relate to arbitration, by applying its contract-law principles that are relevant in a given case.'" Skuse v. Pfizer, Inc., 244 N.J. 30, 47 (2020)

(quoting <u>Leodori v. Cigna Corp.</u>, 175 N.J. 293, 302 (2003)). "[S]tate contract-law principles generally govern a determination whether a valid agreement to arbitrate exists." <u>Waskevich v. Herold Law, P.A.</u>, 431 N.J. Super. 293, 298 (App. Div. 2013) (quoting <u>Hojnowski v. Vans Skate Park</u>, 187 N.J. 323, 342 (2006)).

The Supreme Court's opinion in <u>Atalese</u> does not in any way conflict with the FAA as it "does not disfavor or discriminate against arbitration agreements," but rather "reaffirmed principles long embedded in [New Jersey] jurisprudence." <u>Kernahan v. Home Warranty Adm'r of Fla., Inc.</u>, 236 N.J. 301, 330 (2019) (Albin, J., concurring).[3] As Justice Albin explained, the United States Supreme Court's FAA jurisprudence "do[es] not bar an undemanding state-law requirement that allows consumers a minimal understanding that in choosing arbitration they will not have access to a judicial forum." <u>Id.</u> at 334. Thus, in light of our conclusion the Agreements do not comply with the general contract principles set forth in <u>Atalese</u>, we need not, and do not, decide whether the FAA applies to the Agreements.

---

[3] In <u>Kernahan</u>, 236 N.J. at 328, Justice Albin specifically considered and rejected the argument that <u>Atalese</u> conflicted with the United States Supreme Court's holding in <u>Kindred Nursing Centers L.P. v. Clark</u>, 581 U.S. 246, 248 (2017), a position not advanced by defendants here in their briefs or at oral argument.

We are satisfied <u>Arafa</u> does not compel a different result. In that case, the plaintiffs argued (1) there had been no "meeting of the minds" with respect to arbitration because the terms of the agreement provided it would be governed by solely the FAA, but the agreement was exempt from the FAA under 9 U.S.C. §1, and (2) the court could not apply the NJAA in place of the FAA absent express intent of the parties to do so. <u>Arafa</u>, 243 N.J. at 160-61. The Court was therefore required to examine the FAA exemption to resolve the issues before it. <u>Id.</u> at 166. Further, we note each of the arbitration agreements at issue in <u>Arafa</u> expressly informed the parties their assent thereto constituted a waiver of their right to a trial by jury, as required under <u>Atalese</u>. <u>Id.</u> at 172.

V.

Finally, the CDL defendants assert "the FAA preempts states from invalidating class action waiver clauses contained within arbitration agreements on public policy or unconscionability grounds." Plaintiffs respond the class action waiver was limited to arbitration and is thus unenforceable. We agree with plaintiffs.

The Agreements state "[n]either you nor SCI shall be entitled to join or consolidate claims <u>in arbitration</u> by or against other individuals or entities, or <u>arbitrate</u> any claim as a representative member of a class or in a private attorney

general capacity." (Emphasis added). Nothing in this language is ambiguous—it clearly states the limitation applies to arbitration, with no reference to litigation in court. In light of our decision finding the arbitration agreement unenforceable, we conclude the class action waiver is inapplicable under these circumstances.

To the extent we have not addressed any of the parties' arguments, it is because we conclude they lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3346-22